DECISION AND JUDGMENT ENTRY
This is an appeal from two separate judgments of the Lucas County Court of Common Pleas, Juvenile Division, that Kevin C. is a delinquent child because he committed acts on two separate occasions that would constitute rape, a violation of R.C. 2907.02 if committed by an adult. Because we find plain error in the acceptance of an admission that the record shows was not knowing, intelligent and voluntary, we reverse the adjudication and disposition orders of the trial court and remand this case for further proceedings.
Kevin C. has presented four assignments of error for consideration on appeal. The assignments of error are:
"ASSIGNMENT OF ERROR NO. I
 KEVIN [C.'S] ADMISSION WAS NOT KNOWING, INTELLIGENT AND VOLUNTARY, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND JUVENILE RULE 29.(T.p. 18-25; T.p. 30).
"ASSIGNMENT OF ERROR NO. II
 KEVIN [C.] WAS DENIED DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I. SECTION 16 OF THE OHIO CONSTITUTION WHEN THE JUVENILE COURT ADJUDICATED HIM DELINQUENT WITHOUT DETERMINING HIS COMPETENCY.(T.p. 16-30) (Exhibit `1').
"ASSIGNMENT OF ERROR NO. III
 KEVIN [C.] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.(T.p. 16-30).
"ASSIGNMENT OF ERROR NO. IV
 KEVIN [C.] WAS DENIED HIS RIGHT TO NOTICE AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN THE JUVENILE COURT COMMITTED HIM TO A SECOND TERM IN THE DEPARTMENT OF YOUTH SERVICES AND SUSPENDED SAID COMMITMENT.(T.p. 41) (Exhibit `4')."
Before we consider the arguments relating to the assignments of error, we first consider the argument raised by the state that Kevin has waived all arguments on "the substantive charge" on appeal because he failed to object to the magistrate's rulings in the trial court.
The state premises its waiver argument on Juv.R. 40(E)(3) which provides:
"(3) Objections
 "(a) Time for filing. Within fourteen days of the filing of a magistrate's decision, a party may file written objections to the decision. If any party timely files objections, any other party also may file objections not later than ten days after the first objections are filed. If a party makes a request for findings of fact and conclusions of law under Civ.R. 52, the time for filing objections begins to run when the magistrate files a decision including findings of fact and conclusions of law.
 "(b) Form of objections. Objections shall be specific and state with particularity the grounds of objection. If the parties stipulate in writing that the magistrate's findings of fact shall be final, they may only object to errors of law in the magistrate's decision. Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of the evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." (Emphasis added).
Kevin responds that this court has jurisdiction to consider all of the issues he raises in this appeal because the magistrate in the trial court filed a decision only, and never filed separate findings of fact and conclusions of law. Kevin says that the necessity to raise objections to a magistrate's ruling in the trial court in order to preserve issues for review on appeal only arises if a magistrate files findings of fact and conclusions of law.
The rule followed by Ohio courts is that the failure to object, pursuant to Juv.R. 40, to a finding of fact or conclusion of law from a magistrate's decision, "generally results in waiver of any related issues on appeal." In the Matter of: Albert Montgomery (Mar. 30, 2000), Franklin App. No. 99AP-749, unreported. However, appellate courts are not prevented from exercising discretion to address plain error just because no objections were filed to a magistrate's decision. Id. The Supreme Court of Ohio has held that an appellate court may exercise its discretion to raise plain error in juvenile cases that involve "constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." In re M.D. (1988), 38 Ohio St.3d 149, syllabus. See, also, In re Etter (1998), 134 Ohio App.3d 484, 491-493; In re DwayneJohnson (Dec. 11, 2000), Butler App. Nos. CA2000-03-041, CA 2000-05-073, unreported. (plain error is the exception to waiver rule contained in Juv.R. 40(E)(3)(b)).
A plain error is an:
 "[O]bvious error prejudicial to a defendant, neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects `the fairness, integrity or public reputation of judicial proceedings.' (Footnotes omitted.)" State v. Craft
(1977), 52 Ohio App.2d 1, 7, (quoting United States v. Atkinson (1936), 297 U.S. 157, 160, 80 L.Ed. 555, 56 S.Ct. 391.
As the Tenth District Court of Appeals noted when it concluded that an appellate court can raise plain error in a juvenile case where no objections to a magistrate's report were filed in the trial court pursuant to Juv.R. 40:
 "Blind enforcement of the procedural rule at issue would essentially result in a determination that attorneys who fail to represent indigent minors diligently have the power to deprive their clients of appellate review of delinquency adjudications which can cause the minors to be institutionalized for years. The due process problems inherent with enforcing the rule are readily apparent, especially in the context of juvenile court proceedings where the right to a jury trial and other procedural rights guaranteed to adults are radically curtailed." In the Matter of: Albert Montgomery (Mar. 30, 2000), Franklin App. No. 99AP-749, unreported.
We therefore find that we have jurisdiction to consider whether there was any plain error in this case.
The record shows that Kevin was accused, in four separate complaints filed in the Lucas County Court of Common Pleas, Juvenile Division on March 8, 2001, of four separate acts that would constitute rape if committed by an adult. On March 15, 2001, counsel for Kevin filed a motion asking the juvenile court to order a psychological examination of Kevin. Kevin's counsel indicated to the juvenile court that he had "reason to believe that the juvenile's competency to stand trial and/or his legal responsibility is suspect due to his mental state."
On March 23, 2001, proceedings were conducted by a magistrate in the juvenile court in which Kevin admitted to two counts of rape. The state dismissed the other two counts of rape. Kevin's trial counsel withdrew the motion for a psychological evaluation of his client.
The magistrate subsequently filed two decisions and judgment entries that are under consideration in this appeal. The decisions and judgment entries consisted of forms completed by the magistrate in which he indicated that Kevin admitted to a total of two counts of rape. The magistrate found Kevin a delinquent child as to each admission.
In the first magistrate's decision and judgment entry at issue here, the magistrate put x's in boxes that appeared before the following statements:
 "Committed to the legal custody of the Ohio Department of Youth Services for institutionalization for an indefinite term and "for a minimum period of (1) year to age 21 in secure facility per O.R.C. 2151.35(A)(5)."
In the second form magistrate's decision and judgment entry now under consideration, the magistrate put x's in boxes that appeared before the following statements:
 "Committed to the legal custody of the Ohio Department of Youth Services for institutionalization for an indefinite term and "for a minimum period of (1) year to age 21 in secure facility per O.R.C. 2151.355(A)(5).
 "Stay on ODYS commitment to age 21 or longer on condition of no violation of court order, probation or any law."
Kevin has appealed from the juvenile court's adoption of each of the above described magistrate's decisions and judgment entries.
We have considered the issues raised in the first three assignments of error together to determine whether plain error occurred. We find for the following reasons that plain error did occur.
Juv.R. 29(D) provides, in pertinent part:
 "The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."
This court has explained the effect of the provisions of Juv.R. 29(D)(1)(2) as follows:
 "Ohio courts have held that in a delinquency case, an admission is similar to a guilty plea made by an adult pursuant to a Crim.R. 11(C), in that it constitutes `a waiver of rights to challenge the allegation [in the complaint].' (Citation omitted). While there appears to be no reported Ohio cases which set forth the standard by which to measure a trial court's compliance with Juv.R. 29(D) in accepting an admission in a delinquency case, other courts of appeals have considered this issue and, similarly analogizing to Crim.R. 11(C) proceedings, held that the applicable standard for the trial court's acceptance of an admission is substantial compliance with the provisions of Juv.R. 29(D), without which the adjudication must be reversed `so that the juvenile may plead anew.' (Citations omitted)." In re Christopher R. (1995), 101 Ohio App.3d 245, 247-248.
The main question on appeal is whether the juvenile understood his rights and the effect of his admissions when he made the admissions. Inthe Matter of: Joshua J. Smith (Feb. 22, 2002), Hancock App. No. 5-01-34, unreported.
Our review of the proceedings in this case leads to the inescapable conclusions that: (1) the magistrate failed to adequately address Kevin in this case to ensure that Kevin was making admissions knowingly, intelligently and voluntarily; and (2) that the record does not support a ruling that Kevin did enter his admissions knowingly, intelligently and voluntarily. For instance, the magistrate began by asking Kevin if he understood there were still two rape counts pending against Kevin and that he had the right to have a trial on those charges. To both of the magistrate's initial questions Kevin answered "Yes, sir." The magistrate then asked: "Do you know what a trial is?" Kevin replied: "No, sir." The magistrate then explained:
 "A trial is where if you wanted one, the Prosecuting Attorney sitting here at the table would have to prove that you committed rape and it would be proven by her calling witnesses to testify against you. They would take the stand, be sworn in, your lawyer would have the right to question and cross examine and confront those witnesses at a trial.
 "You would also have the right to subpoena and call witnesses to testify on your own behalf. You also, of course, have the right to remain silent. That means you wouldn't have to say anything because the burden is on the State to prove beyond a reasonable doubt that you committed two counts of rape."
The magistrate made no attempt to ascertain whether Kevin understood his explanations of Kevin's rights. Instead, he continued on as follows:
 "It's my understanding, according to your lawyer, that you wish to give up your rights to have a trial and your right to remain silent and tell the Court what you did and admit to the two rape charges, is that correct? Is that what you want to do?"
Kevin answered: "Yes, sir."
The prosecutor then asked the magistrate to amend the complaints to reflect that Kevin was thirteen, not fourteen when the alleged events took place. The magistrate granted the request. The following exchange then took place between the magistrate and Kevin:
 "THE COURT: Kevin, is anyone making you or forcing you to admit to these charges today? Is anyone making you do it? You have to answer.
"JUVENILE: No, sir.
"THE COURT: You're doing it because you want to?
"JUVENILE: No, sir."
The magistrate did not ask Kevin what he meant by the negative response to the question about whether he wanted to admit the charges. Instead, he went on with further questions regarding whether Kevin understood that the charges to which he was entering admissions were felonies and regarding the sentences the trial court could impose for the charges.
The magistrate then asked the prosecutor to continue the voir dire of Kevin. The prosecutor began asking Kevin if he admitted that certain facts regarding the events that led to the charges against him were true. The following exchange took place:
 "Q. Kevin, in January of 2001, how old were you, please?
"A. Thirteen.
 "Q. Okay. And on — in that — within that month did you have anal intercourse with [the victim]?
"A. No, ma'am.
"Q. Did you put your penis in [the victim's] anus?
"A. No, ma'am."
Kevin's trial counsel then asked for a moment off the record, and the transcript contains a notation that he had an off-the-record attorney, client discussion.
When the record was resumed, the magistrate asked if Kevin was confused by the terminology the prosecutor was using in the voir dire, and Kevin's trial counsel answered that he "believed so." The questioning then resumed and the following exchanges took place:
 "Q. Once again, Kevin, for the record, on January of 2001, how old were you, please?
"A. Thirteen.
 "Q. Okay. An on and within that month, did you place your penis within [the victim's] butt?
"A. Yes, sir — I mean, yes, ma'am.
"Q. And this took place within Toledo, Lucas County?
"A. Uh-huh.
 "Q. Once again in January of 2001, how old were you please?
"A. Thirteen.
 "Q. And so a separate occasion from that within which we just spoke, on another occasion, on a second occasion — on a different time, did you in fact place your penis in [the victim's] butt again?
"A. What do you mean by that?
 "Q. Okay, you did it once. Did you do it again on a different day?
 "(Whereupon off-the-record attorney, client discussion was held.)
 "A. No, ma'am. It only happened the first. That's what he was actually trying to say. But I did it the second time.
 "Q. You did do it a second time? I'm sorry, you have to say it out loud for the record.
"A. Yes, ma'am.
"Q. I'm sorry, what?
"A. Yes, ma'am.
"Q. And this took place within Toledo, Lucas County?
"A. Yes, ma'am."
The magistrate asked no further questions of Kevin to clarify the conflicting answers Kevin had just given. Instead, the magistrate asked how old the victim was, and Kevin answered that the victim was eleven years old.
The magistrate then made a statement that he was satisfied that Kevin's admissions were "knowingly and intelligently and voluntarily made." The magistrate found Kevin "to be delinquent of two counts of rape."
Next, the magistrate asked the state for a recommendation regarding disposition. The state answered that it believed an assessment of Kevin needed to be made. A discussion ensued regarding how long it would take for the assessment to be made and for proceedings to resume to sentence Kevin. Kevin asked the magistrate how long it would be before he was sentenced. The magistrate answered at least two weeks, but how much longer than two weeks he did not know. Kevin expressed concern about having to remain in custody during that time and his counsel asked if Kevin could be released to his mother's home pending sentencing.
After making further inquiries to determine if Kevin was a candidate for release pending sentencing, the magistrate said to Kevin:
 "THE COURT: Okay. Kevin, in part, because of your prior record, which involves a sex offense.
"JUVENILE: Yes, sir.
 "THE COURT: And because of your new case also involves a sex offense, the Court is going to make the decision that you have to be held at this point, okay.
 "I may have held you even if you didn't have the prior. Because you do have this prior it's almost imperative that the Court hold you, okay? So anyway, what we're going to do is have you go with the deputy. Your mom is going to get the date. At some point your attorney and your mom will let you know what the date is for the disposition, okay? Do you have any questions?
"JUVENILE: Yes, I do.
"THE COURT: Uhum.
 "JUVENILE: If you all don't sentence me, how long will it be to have a trial thing?
 "THE COURT: What was the question, Mr. Bergman? I couldn't hear him.
 "MR. BERGMAN: I will address his questions, Judge. I will talk to him upstairs.
 "THE COURT: All right. If there's nothing else, then this hearing is adjourned and Kevin is to be returned to detention at this point. Thank you.
When the exchanges above are viewed as a whole, it is clear that the magistrate had an obligation to make further inquiry of Kevin at several points during the proceedings before the magistrate could fully ascertain whether Kevin actually understood what his rights were, that he was knowingly, intelligently and voluntarily waiving those rights, and that he even understood what the facts were to which he was entering an admission. Kevin exhibited confusion throughout the proceedings, and his closing question shows that he did not even understand that after he entered admissions to the charges, no trial would be held. On the basis of this record, we find plain error with regard to the magistrate's finding that Kevin made his admissions knowingly, intelligently and voluntarily.
Because this finding of plain error requires the reversal of the finding of delinquency and the dispositional order and the remand of this case for further proceedings, we need not consider the remaining issues raised by Kevin regarding whether he received ineffective assistance of counsel, whether he should have been evaluated for competency prior to the entry of his admissions and whether the trial court committed error when it entered and stayed a second dispositional order without informing Kevin of the order in open court. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed and this case is remanded for further proceedings consistent with this decision. The state is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.